## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| JULIE MARTINSON, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION H-14-555 |
| § | |
| TOTAL PETROCHEMICALS & REFINING USA, § | |
| INC. & AMERICAN MEDICAL SYSTEMS, INC., § | |
| § | |
| Defendants. § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to remand filed by plaintiffs Julie Martinson, *et al.* (the "plaintiffs"). Dkt. 9. After considering the parties' arguments and the applicable law, the motion to remand (Dkt. 9) is **GRANTED**.

### BACKGROUND

Thirty-four adult female plaintiffs allege injuries from the surgical implantation of the Sparc Sling ("Sparc"), a transvaginal mesh product sold by defendant American Medical Systems, Inc. ("AMS"). Dkt. 1, Ex. A (original petition) at 5 ¶¶ 21, 59. The Sparc is marketed as a permanent medical device for the treatment of pelvic organ prolapse and stress urinary incontinence. *Id.* at 10 ¶ 60. The device is manufactured with multiple components, including polypropylene resin. *Id.* at 10 ¶ 65. This substance is produced by defendant Total Petrochemicals and Refining USA, Inc. ("Total") at its polypropylene facility in La Porte, Texas. *Id.* at 10–11 ¶ 66. Plaintiffs claim that their injuries arising from the Sparc implantation were due, at least in part, from the polypropylene's effects on their bodies, as they allege polypropylene is incompatible with human tissue. *Id.* at 11 ¶ 71. Plaintiffs assert claims against the defendants for negligence, breach of warranty, and products liability for failure to warn and manufacturing and design defects. *Id.* at 18–26.

The parties are not completely diverse: AMS is a citizen of Minnesota and Delaware; Total is a citizen of Delaware and Texas; and plaintiffs are citizens of various states, including five Texas citizens and six Minnesota citizens. *Id.* at 5–9 ¶¶ 21–57; Dkt. 11 (AMS response to order concerning removal) at 1–3. AMS filed a notice of removal on diversity grounds, acknowledging that the parties to the original complaint are not diverse. Dkt. 1 (notice of removal). However, AMS argued that its right to removal remained intact based on two theories: (1) Total's Texas citizenship should be disregarded because plaintiffs have no reasonable basis for recovery against Total; and (2) the Minnesota plaintiffs were fraudulently misjoined in this case, and their citizenship should also be ignored for diversity purposes. *Id.* at 4–14 ¶¶ 16–55. If the citizenship of Total and the Minnesota plaintiffs is disregarded, the parties will be completely diverse and remand should be denied on diversity grounds. But conversely there is no dispute that if either Total or the Minnesota plaintiffs are properly joined in this case, complete diversity is destroyed and the court lacks jurisdiction. The court will limit its analysis to the potential misjoinder of the Minnesota plaintiffs because it finds that analysis dispositive.

## ANALYSIS

To establish subject-matter jurisdiction predicated on diversity, complete diversity of citizenship must exist among the parties, and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332. A case may be removed despite a non-diverse defendant if that defendant was joined improperly, *i.e.*, without a legal basis to do so. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). As the removing party, the defendant bears the heavy burden of demonstrating improper joinder. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). "Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet '[improper]' to the joinder, will not suffice: the showing must be such as compels the conclusion that

the joinder is without right." *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146, 152, 34 S. Ct. 278 (1914); *see also Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

A defendant normally establishes improper joinder in one of two ways: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiffs to establish a cause of action against the non-diverse party in state court.'" *Smallwood*, 385 F.3d at 573 (quoting *Travis*, 326 F.3d at 646–47). But as to the Minnesota plaintiffs, AMS makes neither argument. Rather, relying upon *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)), AMS argues that a third type of improper joinder has occurred—fraudulent *mis*joinder. Dkt. 17 at 4–9; *see also In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002) (stating, but not holding, that fraudulent misjoinder of plaintiffs "should not be allowed to defeat diversity jurisdiction"). AMS argues that the claims of the plaintiffs, including those from Minnesota, do not arise out of the same transaction or occurrence or series of transactions or occurrences as required for proper joinder under the rules, because the only commonality among the plaintiffs is the implantation of a common device, the Sparc. *Id.* at 6. All 34 plaintiffs' implants were performed at different times, by different doctors, at different hospitals and clinics around the country over a span of nine years. *Id.* AMS contends that this general lack of commonality supports an egregious misjoinder finding and is a reason to disregard the Minnesota plaintiffs' citizenship in the jurisdictional analysis. *Id.* at 6–9. The *Benjamin Moore* court explained that federal jurisdiction may be present despite a facial lack of diversity if non-diverse plaintiffs are fraudulently misjoined and therefore irrelevant to a citizenship review. *Benjamin Moore*, 309 F.3d at 298 (citing *Tapscott* and describing that court as holding that "misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction").

While *Benjamin Moore* did not expressly adopt the *Tapscott* analysis, the court indicated its agreement with that decision, albeit in *dicta*. *Id.* Further, numerous district courts in the circuit have applied *Tapscott*, with some assuming, without deciding, that fraudulent misjoinder is a "third possible ground to support a finding of improper joinder." *Tex. Instruments, Inc. v. Citigroup Global Mkts., Inc.*, 266 F.R.D. 143, 147 (N.D. Tex. 2010) (citing cases). This court will make the same assumption for purposes of the pending motion to remand.

Courts in this district and others in the Fifth Circuit ask two conjunctive questions in the fraudulent misjoinder analysis: (1) has one party been misjoined with another party in violation of the applicable state's joinder rules;[1] and (2) is any misjoinder sufficiently "egregious" to rise to the level of a fraudulent misjoinder? *See Centaurus Unity v. Lexington Ins. Co.*, 766 F. Supp. 2d 780, 789–90 (S.D. Tex. 2011); *Tex. Instruments*, 266 F.R.D. at 147–48. Under Texas Rule of Civil Procedure 40(a), plaintiffs may be joined in a single case "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." TEX. R. CIV. P. 40(a). "Texas Rule 40 is interpreted in light of a state policy that encourages broad joinder of multiple parties in the same action." *Tex. Instruments*, 266 F.R.D. at 148–49 (citing *In re E.L.P.*, 636 S.W.2d 579, 581 (Tex. App.—San Antonio 1982, no writ)).

But, as stated above, even when a party has been misjoined procedurally under state law, a federal court may not ignore that party for purposes of determining a federal court's diversity jurisdiction unless the misjoinder is "egregious," *i.e.*, if the misjoinder is grossly improper and without

---

[1] The Fifth Circuit has not decided whether state or federal joinder rules apply in determining whether there has been fraudulent misjoinder. This court applies state joinder law because the allegations of plaintiff's misconduct depend on whether plaintiffs fraudulently misjoined parties upon filing suit in state court prior to removal. *See Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 563 (N.D. Tex. 2009); *Centaurus*, 766 F. Supp. 2d at 789 n.27.

any arguable basis other than to defeat diversity. *Tapscott*, 77 F.3d at 1360 (misjoinder "bordering on a sham" is sufficient to permit court to ignore non-diverse defendant); *see also Bright v. No Cuts Inc.*, No. Civ. A-03-640, 2003 WL 22434232, at *4 (E.D. La. Oct. 27, 2003) ("Courts analyzing fraudulent misjoinder claims under *Tapscott* have consistently noted that mere misjoinder does not constitute *fraudulent* misjoinder.") (collecting cases) (emphasis in original). In *Tapscott*, for example, one set of plaintiffs (the "automobile plaintiffs") sued one group of defendants (the "automobile defendants") over an alleged breach of automobile service contracts. *Tapscott*, 77 F.3d at 1355. The automobile plaintiffs subsequently amended the complaint to join the additional claims of a second set of plaintiffs (the "retail plaintiffs") brought against a second group of defendants (the "retail defendants") regarding retail-product service contracts. *Id.* The claims were entirely distinct, and although all retail defendants were diverse from the retail plaintiffs, one automobile defendant was not diverse from certain retail plaintiffs. *Id.* at 1359–60. The Eleventh Circuit agreed with the district court that in such circumstances, when two distinct suits are joined for purposes of destroying diversity, the misjoinder is so egregious that severance is warranted and citizenship of misjoined parties may be disregarded. *Id.* at 1360. This showing of "egregiousness" presents a high bar for defendants, and as a result *Tapscott*'s fraudulent misjoinder analysis has not often been successful in this circuit. Indeed, "the overwhelming majority of those cases have been remanded to state court, often on the ground that even if the parties have been misjoined, such misjoinder is not so egregious as to be fraudulent." *Tex. Instruments*, 266 F.R.D. at 152 (collecting cases).

Here, all 34 plaintiffs were implanted with the Sparc device at different times, by different doctors, at different facilities throughout the country. Dkt. 17 at 6. AMS argues that these distinctions mean that the plaintiffs' claims do not arise out of the same "transaction or occurrence" or "series of transactions or occurrences." *Id.* at 6–9. Plaintiffs respond that AMS's analysis is "simplistic" and

5

ignores the fact that the same Sparc device caused all of their injuries. Dkt. 9 at 19. Conflicting case law supports both sides, and this court is mindful that the Texas joinder rule is generally interpreted in favor of joining multiple, similarly-situated parties in one action when a logical relationship connects their claims. However, the court defers the determination of misjoinder to the state court because it finds, in the second stage of the analysis, that any misjoinder is not so "egregious" as to permit disregarding certain plaintiffs' Minnesota citizenship.[2]

Assuming that the requirements of Texas Rule 40 have not been met in this case, the court cannot ignore the Minnesota plaintiffs' joinder unless their claims are"wholly distinct" and have "no real connection" to the claims asserted by the other plaintiffs. *Tapscott*, 77 F.3d at 1360. Here, the claims brought by the plaintiffs have a sufficient nexus among them, and they do not represent the type of "egregious" misjoinder, "bordering on a sham," that is disallowed for purposes of determining fraudulent misjoinder in federal court. *Texas Instruments*, 266 F.R.D. at 153 ("Even assuming for the sake of argument that Morgan Stanley has been misjoined, that misjoinder is not so egregious as to be fraudulent."). The plaintiffs were all implanted with exactly the same device, and their claims will share several common questions of law and fact in their causes of action. This type of factual and legal connection is real and prevents the court from finding that the joinder borders "on a sham."

Further, the court notes that defendants' principal cases supporting a contrary finding are distinguishable. *See* Dkt. 17 at 6–7; *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651–54 (S.D. Tex. 2005); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136,

---

[2] The court stresses that it has assumed, without deciding, the existence of procedural misjoinder in this case. The court does not hold that the Minnesota plaintiffs have been misjoined under Texas Rule 40. That question is properly left to the Texas state court to decide in the first instance.

6

147–48 (S.D.N.Y. 2001); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, MDL No. 2243, 2012 WL 1118780, at *4 (D.N.J. Apr. 3, 2012). Unlike this case in which the same Sparc device is common to all plaintiffs, in *Silica*, *Diet Drugs*, and *Fosamax*, each court found egregious misjoinder after noting that the plaintiffs' claims did not arise from a single product or drug, manufactured by a single defendant, that produced the plaintiffs' injuries. *See Silica*, 398 F. Supp. 2d at 652–53 (finding egregious misjoinder of claims by plaintiffs who were exposed to silica in different jobs with different equipment); *Diet Drugs*, 294 F. Supp. 2d at 679 (holding under Georgia joinder law that the New Jersey plaintiffs were egregiously misjoined when they alleged only that they took "Redux, Pondimin and/or phentermine—not necessarily the same combination of drugs or for the same amount of time"); *Fosamax*, 2012 WL 1118780, at *4 (finding egregious misjoinder based, in part, on the fact that plaintiffs broadly asserted claims against multiple brand and generic manufacturers of Fosamax and/or alendronate sodium, without regard to dosage or length of pharmacological treatment).

Further, in *Rezulin*, Judge Kaplan addressed eight pending actions amoung hundreds seeking recovery for injuries allegedly resulting from the use of Rezulin, a prescription diabetes drug manufactured by Warner-Lambert Company. *Rezulin*, 168 F. Supp. 2d at 138. In one of the consolidated cases, plaintiffs alleging claims against the drug manufacturer joined the claims of Ouida Dupree ("Dupree"), a plaintiff who was suing a home health care provider for negligent administration of Rezulin after its removal from the market. *Id.* at 144–45. While Dupree also asserted claims in common with other plaintiffs against Warner-Lambert, the court found misjoinder due to a general lack of commonality, including a failure of allegations relating to receiving Rezulin from the same source or that the plaintiffs were exposed for similar periods of time. *Id.* at 146. Judge Kaplan denied remand, but he notably declined to apply the "egregious" prong of the *Tapscott* analysis. *Id.* at 147–48 ("While aware that several courts have applied *Tapscott*'s egregiousness standard when considering

misjoinder of plaintiffs in the context of remand petitions, this Court respectfully takes another path."). He suggested that if he had, the misjoinder would not have reached that level because "Dupree's claims have at least an empirical, if not a transactional, relationship to the claims of all the other plaintiffs." *Id.* at 147.

Like the *Rezulin* plaintiffs, the Minnesota plaintiffs' claims in this case bear at least an empirical relationship that is not "wholly distinct" from those of the other plaintiffs. And even though Judge Kaplan declined to do so, this court follows other courts in this district and circuit that employ the "egregiousness" prong of the jurisdictional analysis. Any misjoinder in this case is not egregious, as that term has been defined in *Tapscott* and its progeny, and the Minnesota plaintiffs' citizenship will not be disregarded when evaluating the propriety of removal. The presence of the Minnesota plaintiffs destroys complete diversity, as defendant AMS is also a Minnesota citizen, and the court will remand this case to Texas state court.

## CONCLUSION

Plaintiffs' motion to remand (Dkt. 9) is **GRANTED**. This case is **REMANDED** to the 334th Judicial District Court of Harris County, Texas.

Signed at Houston, Texas on May 23, 2014.

_____
Gray H. Miller
United States District Judge